UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| NATHAN SMITH,<br><br>    Plaintiff,<br><br>V.<br><br>WARDEN J. C. HOLLAND, et al.,<br><br>    Defendants. | CIVIL NO. 6: 13-72-KKC<br><br>MEMORANDUM OPINION<br>AND ORDER |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the motion of the defendants, Lieutenant Paul Boulet, Nurse Practitioner Karen Bennett-Baker, Unit Manager Farrah Sliver, and Senior Officer Brandon Kidd, to dismiss the complaint, or in the alternative for summary judgment. [R. 46] Plaintiff Nathan Smith has responded to the motion [R. 54] to which the United States has replied. [R. 57] This matter is therefore ripe for adjudication.

**I**

Nathan Smith is a prisoner formerly incarcerated at the United States Penitentiary - McCreary in Pine Knot, Kentucky. Proceeding without an attorney, Smith filed a civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. ("FTCA").[1] In his original and amended complaints, Smith alleges that he has been diagnosed with epilepsy and somnambulism (or "sleepwalking"), and that as a result of his conditions, during his sleep he experiences epileptic seizures, during some of which he has assaulted, bitten, ended up in the same bed with, and

---
[1] The Court dismissed Smith's FTCA claims on September 18, 2013. [R. 31]

touched various cellmates. Smith contends that his own conduct places him at risk of being assaulted by other inmates, but that the defendants have refused to assign him to a one-man cell. [R. 7, pp. 2-3] Smith also claims that medical staff provided inadequate medical treatment for a broken thumb, and that prison officers took affirmative steps to place him at risk from assault by other inmates.

First, Smith alleges that shortly after his transfer to USP-McCreary, in March 2012 nurse Bennett-Baker purposely interfered with his efforts to be assigned to a one-man cell by creating medical records which falsely stated that Smith had not been diagnosed with somnambulism or epilepsy. Smith also claims that she stopped his prescriptions for mirtazapine and lamotrigine (an anti-seizure medication).[2] [R. 1, p. 2; R. 7, pp. 3-4; R. 44, pp. 1-2] Smith contends generally that defendants acted improperly by failing to assign him to a single cell in light of his activities while sleepwalking. [R. 7, p. 3]

Second, Smith alleges that while incarcerated at the federal penitentiary in Coleman, Florida, he was placed in restraints and kept in his cell for nine days between December 7 and 16, 2011, because he had refused to accept a cellmate. On December 15, 2011, Smith apparently fell from his bunk, and injured his right thumb in the process. When an x-ray showed loose bodies at the first CMC joint, his thumb was placed in a splint and pain medication was prescribed. [R. 47-4, pp. 98-102] In light of the x-ray results, Smith's primary care provider requested that he be seen by an orthopedic specialist [R. 47-4, pp. 104], but he was transferred to USP-McCreary before the consultation occurred.

Upon his arrival at USP-McCreary, a health assessment was conducted on February 24, 2012. At this time, nurse practitioner Bennett-Baker renewed his prescription for lamotrigine.

---

[2] From 2010 to 2012, Smith consistently refused to take mirtazapine, notwithstanding its utility as both an antidepressant and as a sleep stabilizer, insisting instead that he be housed in a cell by himself. [R. 46-9, pp. 2-4]

On March 11, 2012, she deferred the request for an orthopedic consult for Smith's thumb injury until a new x-ray could be taken to assess its current condition. [R. 47-5, pp. 107-110] A subsequent x-ray of his thumb indicated that it was negative for broken bones and was consistent with the prior x-rays, presumably indicating that loose bodies at the first CMC joint remained discernible. [R. 47-5, pp. 133-136] In her July 6, 2012, encounter notes, Bennett-Baker stated that Smith had received extensive medical treatment for his thumb injury, including conservative therapy, repeat x-rays, splints, pain medications, and medical passes excusing him from work. [R. 47-5, p. 137] Smith nonetheless claims that Bennett-Baker failed to provide adequate treatment for his broken right thumb. [R. 1, p. 2; R. 7, pp. 3-4; R. 44, pp. 1-2]

Third, on March 29, 2012, Smith allegedly "touched inmate Pipkin in his sleep." Smith claims that Lieutenant Boulet then told Pipkin and another inmate that they should "beat [Smith's] ass." [R. 44, p. 4] Smith further alleges that Boulet has repeatedly made verbally abusive comments to him. *Id*. Smith states that on May 8, 2012, BOP officers were about to place him in restraints for refusing to accept a cellmate. When Smith told the officers that an outside neurologist had diagnosed him with epilepsy and a sleep disorder, Smith alleges that Unit Manager Sliver contradicted that claim, stating that "the outside doctor said there was nothing wrong with you." As a result, the officers placed Smith in restraints. [R. 1, p. 3; R. 44, pp. 2-3]

Fourth, Smith alleges that on December 27, 2012, Lt. Boulet ordered Officer Kidd to put Smith in a cell with inmate James Jordan, whom Smith states is mentally ill. Smith alleges that while in the cell together Jordan forced him to commit sexual acts. The two inmates were later separated and interviewed regarding these events. Lt. Boulet then charged Smith with taking Jordan hostage. Smith alleges that he agreed to sign a statement that Jordan had not sexually assaulted him only under duress. [R. 7, pp. 3-4]

On March 28, 2012, Smith filed a formal grievance with the warden, Administrative Remedy ID 684499-F1, regarding a number of complaints, including his placement in restraints in December 2011at USP-Coleman; the cancellation by Dr. Vazquez and nurse Bennett-Baker of his prescription for lamotrigine; the lack of proper medical care or corrective surgery for the injury to his thumb; the disregard of his diagnosis for epilepsy; and his recurring assignment to two-man cells. Smith mentioned that he was then celled with inmate Pipkin. The warden denied that grievance on April 25, 2012. [R. 46-6, pp. 1-2] The Mid-Atlantic Regional Office affirmed that denial on appeal on May 22, 2012, as did the Central Office on February 5, 2013. *Id*. at pp. 3-6.[3] This is the only grievance Smith filed regarding the events described in the complaint.

In their motion for summary judgment, the defendants assert that Smith's complaint essentially asserts four distinct claims: (1) that because he walks in his sleep, Smith should not be housed with a cellmate for the safety of himself and other inmates; (2) the injury to his thumb was not properly treated; (3) the defendants failed to protect him from the sexual assault that inmate Jordan committed upon him; and (4) the defendants falsely charged him with taking inmate Jordan hostage. [R. 46-1, p. 2] Defendants Sliver, Boulet, and Kidd contend that they are entitled to summary judgment because the sole grievance that Smith did file regarding the subject matter of his complaint did not relate in any way to his allegations regarding their conduct, and thus his claims against them are unexhausted. [R. 46-1, pp. 7-11] They also contend, in the alternative, that Smith's allegations – that they verbally harassed him and failed to protect him – fail to state a claim because he suffered no physical injury as a result of their alleged actions. [R. 46-1, pp. 17-25] For her part, nurse Bennett-Baker contends that Smith was

---

[3] Smith has recently filed a Motion to Request Private Medical Examination [R. 59] in which he asks the Court to issue an order compelling officials at the federal penitentiary in Lewisburg, Pennsylvania, where he is now confined, to provide him with additional medical care for the injury to his thumb. The Court will deny that motion, as it relates to medical care he is receiving over two years after the events complained of in this action, and requests relief against officials who are not parties to this action and over whom this Court lacks personal jurisdiction.

provided ample medical treatment, for both the injury to his thumb and for his somnambulism, and any disagreement regarding the adequacy or appropriateness of that treatment fails to state a claim of deliberate indifference under the Eighth Amendment. [R. 46-1, pp. 13-16]

## II

The Court must treat the defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and declarations extrinsic to the pleadings in support of it. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

### A

First, Smith's claims against Boulet, Sliver, and Kidd must be dismissed for failure to exhaust administrative remedies. Federal law requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement applies to all claims related to the conditions of the prisoner's confinement, including medical care. *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004). Exhaustion is also required even where the prison grievance system cannot provide the relief sought in the complaint, such as monetary damages. *Booth v. Churner*, 532 U.S. 731, 739-41 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."); *Massey v. Helman*, 259 F.3d 641, 646 (7th Cir. 2001).

Here, on March 28, 2012, Smith filed one grievance (No. 684499-F1) which complained about his assignment to a two-man cell notwithstanding his alleged diagnosis for epilepsy and sleepwalking, and expressed his dissatisfaction with the medical care for his injured right thumb.

[R. 46-6, p. 1] This is the only grievance filed by Smith which relates to the claims in his complaint. [R. 46-3, p. 4] Because Smith fully appealed each denial of this grievance up to and including to the BOP's Central Office, the claims related to these two issues are fully exhausted.

But this grievance made no complaint regarding the events or misconduct alleged in the complaint against officers Boulet, Kidd, or Sliver, rendering Smith's claims against them - regarding verbal abuse, inciting other inmates to violence against him, and placement in a cell with inmate Jordan - unexhausted. Of course, these defendants need not have been identified by name in the grievance, *Jones v. Bock*, 549 U.S. 199, 217-18 (2007), but a grievance must describe the facts which gave rise to the grievance in order to alert prison officials to the nature of the problem. *Id*. at 219; *see Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (holding that a prison grievance must "contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.... In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."); *Johnson v. Woodford*, No. CV 04–05995–GHK, 2010 WL 4007308, at *4 (C.D. Cal. April 20, 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim."). The most obvious reason why Smith's grievance made no mention of the events giving rise to his claims against these officers is that they occurred – on March 29, 2012; May 8, 2012; and December 27, 2012, respectively – only <u>after</u> he had filed his grievance on March 28, 2012. Because Smith did not file a separate grievance regarding these subsequent events, his claims arising from them are unexhausted, and must be dismissed under 28 U.S.C. § 1997e(a). *Woodford v. Ngo*, 548 U.S. 81, 86 (2006).[4]

---

[4] In light of this conclusion, the Court need not reach the merits of Smith's claims. The defendants are correct, however, that Boulet's alleged verbal abuse and direction to Pipkin that he should "beat his ass" fail to state claims

7

In contrast, Smith's claims regarding the sufficiency of the medical treatment he received for his thumb injury and the defendants' manner of addressing his self-reported epilepsy and sleepwalking are fully exhausted. The Court will address these claims in turn.

**B**

The Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This test contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294 (1991). The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897. The subjective component requires a plaintiff to show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006). Deliberate indifference may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104.

---

of a constitutional dimension. Verbal abuse by guards, while unprofessional, does not violate the Constitution, *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004), and Boulet's alleged statement did not incite Pipkin to physically injure Smith, precluding an Eighth Amendment claim. *Spotts v. Hock*, No. , 10-353-GFVT, 2011 WL 676942, at *2-3 (E.D. Ky. Feb. 16, 2011).

However, no claim of a constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning an appropriate course of treatment. *Sharpe v. Patton*, No. 08-cv-58-HRW, 2010 WL 227702, at *10-11 (E.D. Ky. Jan. 19, 2010). When the cause of action is based on an allegation that the prescribed treatment was inadequate in some way, rather than on an allegation that the prison official failed to provide the plaintiff with any treatment, courts traditionally have been reluctant to second guess the medical official. *Rodriguez v. Lappin*, No. 08-cv-347-GFVT, 2009 WL 2969510, at *5-6 (E.D. Ky. Sept. 11, 2009). Simply put, differences of opinion as to matters of medical judgment, negligent treatment, or even medical malpractice are insufficient to establish that one has received inadequate medical care in violation of the Eighth Amendment.

Here, the defendants have filed several hundred pages of medical records which indicate that they continued to provide Smith with ongoing treatment for the injury to his thumb, notwithstanding the absence of any concrete medical evidence that it had ever been broken, or that the small loose bodies around the first CMC joint warranted anything more than conservative pain management. [R. 47-3 to 47-6] The abundant medical care provided to Smith constitutes the antithesis of deliberate indifference to his medical needs. When Smith fell from his bunk bed on December 15, 2011, BOP performed an x-ray the same day which showed "no gross evidence of fracture", but a splint was applied to immobilize the thumb and pain medication was prescribed. [R. 47-4, p. 98] When the x-ray indicated only the presence of loose bodies, conservative care was continued with a repeated x-ray ordered in two weeks, to be followed by an orthopedic consult. *Id*. at 102, 104. The followup x-ray was delayed by Smith's February 2012 hunger strike at USP-Coleman, his subsequent transfer to USP-McCreary, and another hunger strike at that prison. On June 19, 2012, a followup x-ray showed "negative,

consistent with prior and no significant changes." [R. 47-5, pp. 133, 137] Throughout 2012, health services staff continued to provide Smith with a variety of pain medications, including aspirin, ibuprofen, naproxen, and meloxicam. [R. 47-5, pp. 133, 143, 150] Nonetheless, Smith affirmatively sought and obtained a visit with a staff psychologist at McCreary in a transparent effort "to obtain documentation to strengthen his complaint against Health Services" that he was experiencing pain in his right hand. [R. 47-5, p. 161]

The medical records provided by the defendants establish that they provided Smith with repeated physical examinations and medical testing, as well as extensive treatment for a minor and temporary injury to his thumb. The law is clear that under such circumstances, no deliberate indifference is shown, even if the prisoner disagrees with the appropriateness or sufficiency of the care given. *Lyons v. Brandly*, 430 F. App'x 377, 379-81 (6th Cir. 2011). It is well-settled that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (*quoting Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). The Eighth Amendment does not require that every request for medical care by an inmate or specific type of care be honored. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 (6th Cir. 1972); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Because the plaintiff received medical attention, and his dispute is over the timing and adequacy of that treatment, the Court will not second-guess medical judgments or constitutionalize these state tort claims." *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 849 (N.D. Ohio 2007); *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013). Smith's claim regarding the medical treatment for his thumb injury will therefore be dismissed with prejudice.

10

## C

With respect to Smith's alleged sleepwalking and epilepsy, it appears that Smith first started claiming that he experiences sleepwalking episodes in December 2010. [R. 47-3, p. 59; 47-4, p. 2] Smith was prescribed mirtazapine at this time for depression, but the drug also promotes normal sleep. Although Smith had initially agreed to try the drug, by March and April 2011 he was still refusing to take the medicine because it was not specifically directed at treating sleepwalking. [R. 47-4, p. 3, 7-11] By May 2011, Smith began insisting that the proper "treatment" for his sleepwalking was for him to be assigned to a single cell; however, the staff psychiatrist expressly cautioned Smith that his initial decision to prescribe mirtazapine had been "based on his self-report, rather than objective data like sleep lab findings" and that "while his clinical story was adequate in my view to justify reasonable treatment interventions, my offering those should not be used in an effort to 'prove' the correctitude of his diagnosis." [R. 47-4, p. 16] At this point, Smith was still refusing to take the mirtazapine he had been prescribed and - contrary to his psychiatrist's admonition - began falsely claiming to prison staff that he had been "diagnosed by Dr. Wolfson for sleepwalking ..." [R. 47-4, p. 29]

On September 28, 2011, Smith was examined by a neurologist, and an electroencephalogram ("EEG") was performed. The EEG results were abnormal, and Smith's prescription for mirtazapine was discontinued while he began taking lamotrigine. [R. 47-4, pp. 41-46] On November 1, 2011, Dr. Hylton concluded that Smith's EEG results were "consistent with" epileptogenic abnormality, and that the events *described by Smith* were consistent with nocturnal seizure events. [R. 47-4, p. 59] Smith thereafter continued to assert that he had been diagnosed with sleepwalking; however, he complained that the lamotrigine was causing insomnia, and on December 10, 2011, refused to take his medication. [R. 47-4, pp. 66-67]

11

On December 8, 2011, Smith renewed his demand for a single cell, claiming that he had bitten his cellmate on the finger during his sleep, but contending that he does not sleepwalk when he has a single cell. Smith was then placed in restraints after coating his wrist and cell with his own feces, which he acknowledged was done in an effort to force staff to place him in a single cell. Dr. Tidwell concluded that his actions were likely a ploy to obtain a single cell, as his symptoms and descriptions of events were not consistent with seizure disorders or sleepwalking. [R. 47, p. 77-80] Following his transfer to USP-McCreary, Smith continued his efforts to convince staff and other inmates alike that he was a sleepwalker who might assault or act inappropriately during his sleep.

Throughout the course of incarceration, the basis for his assertion that he is a sleepwalker was based solely on his own description of events, and was never confirmed through objective medical or sleep testing. [R. 47-5, p. 168 ("There is no evidence-based clinical findings to support claim of exhibiting behavior during sleep ... that would render him unaccountable for his actions.")] With respect to his belief that he suffers from epilepsy, an EEG did show signs that were "consistent with" nocturnal seizure events. The BOP offered prescription anti-seizure medications to address any symptoms, although these were sometimes discontinued because of side effects like insomnia, or because of Smith's refusal to take his medications. Smith's medical care in this regard was sometimes confounded by his own behavior, including his repeated refusals to submit to physical examination or medical testing, and through his failure or refusal to take medications once prescribed. In addition, prison psychologists concluded that Smith's conduct - including his self-serving statements regarding his conduct while in his own cell and his symptoms - was intentionally directed towards obtaining the single cell he desired. One psychiatrist stated that Smith has a lengthy, established, and admitted history of making

12

false statements regarding suicidal ideation, epilepsy, and sleepwalking, which were made in an effort to get what he wants, including being assigned to a single cell, and to gain control over his environment. [R. 46-12, Declaration of Dr. Lemon]

The foregoing establishes that the defendants were not deliberately indifferent to Smith's serious medical needs or subject him to an unreasonable risk of harm with respect to his sleepwalking or epilepsy. First, a purely self-reported condition unsupported by a medical diagnosis or objective data does not establish the existence of a serious medical need. Cf. *Gee v. Pacheco*, 627 F. 3d 1178, 1192 (10th Cir. 2010) (holding that alleged failure to recognize or treat self-reported sleepwalking disorder fails to establish an Eighth Amendment violation).

Second, Smith's statements regarding sleepwalking and possible "night seizures" were taken seriously and promptly addressed. He was seen on numerous occasions by health services personnel, physicians, and staff psychiatrists; two separate EEGs were taken; and he was prescribed several medications to treat his symptoms, both self-reported and objectively established. Smith's repeated contention that the only proper was to address his sleepwalking would be to house him in a single cell constitutes a mere disagreement with his care providers regarding his treatment, it does not evidence their deliberate indifference to his condition. *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013).

Finally, notwithstanding Smith's oft-expressed fear that his activities while sleepwalking would one day cause a cellmate to assault or kill him, no such assault has ever taken place, and Smith has never suffered any physical injury as a result of the BOP's decision to place him in two-man cells. An inmate's subjective fear that he *might* be assaulted in not sufficient to implicate the Eighth Amendment, *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) (fear of assault was not "the kind of extreme and officially sanctioned psychological harm that [supports]

13

a claim for damages under the Eighth Amendment"), and absent any injury flowing from the BOP's discretionary determination regarding Smith's cell assignment, he has failed to establish any claim of constitutional dimension.

Accordingly, **IT IS ORDERED** that:

1. The defendants' motion for summary judgment [R. 46] is **GRANTED**.

2. Smith's complaint, as amended, [R. 1, 7, 10, 44] is **DISMISSED WITH PREJUDICE**.

3. Smith's Motion to Request Private Medical Examination [R. 59] is **DENIED**.

4. The Court will enter a judgment contemporaneously with this order.

5. This matter is **STRICKEN** from the active docket.

Dated August 26, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY